IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARDEN CITY BOXING CLUB, Inc., a California corporation,<br><br>        Plaintiff,<br><br>  v.<br><br>JOSE INOCENTE NAVACARBAJAL, also known as JOSE INOCENTE NAVA, individually and doing business as NORTH FORTY BAR,<br><br>        Defendant. | CASE NO.  1:05cv0769 REC TAG<br><br>FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT<br><br>(Doc. 14) |

**INTRODUCTION**

In this action alleging unauthorized interception, receipt and broadcast of the June 5, 2004 Oscar De La Hoya v. Felix Sturm World Championship Fight Program ("the Program"), plaintiff Garden City Boxing Club, Inc. ("Plaintiff") seeks a $105,110 default judgment against defendant Jose Inocente Navacarbajal, also known as Jose Inocente Nava, individually and doing business as North Forty Bar ("Defendant").

On August 24, 2005, Plaintiff filed a request for entry of default against Defendant, with supporting papers. (Court Doc. 8). On September 7, 2005, default was entered against Defendant. (Court Doc. 13). On September 7, 2005, Plaintiff filed a motion for default judgment against Defendant, with supporting papers. (Court Doc. 14). On October 3, 2005, the Court conducted a noticed hearing on Plaintiff's application for a default judgment. Attorney Thomas C. Riley

appeared telephonically on behalf of Plaintiff at the October 3, 2005 hearing; Defendant did not appear.

As discussed below, this Court RECOMMENDS to grant Plaintiff a default judgment against Defendant in the amount of $9,110.

## BACKGROUND[1]

Plaintiff, a California corporation, is an international distributor of sports and entertainment programming. Plaintiff, by contract, purchased the territorial rights to broadcast the Program and thereafter entered into sublicensing agreements with various commercial entities throughout North America, by which it granted limited public exhibition rights to these entities for the benefit and entertainment of the patrons within its respective establishments (i.e., hotels, racetracks, casinos, taverns, bars, restaurants, social clubs, etc.).

The transmission of the Program was encrypted and made available only to Plaintiff's customers, commercial locations which paid Plaintiff the requisite closed-circuit license fees in order to have authorization to view the broadcast of the Program.

On June 14, 2005, Plaintiff filed this action alleging that Defendant unlawfully intercepted and intentionally broadcasted the Program at Defendant's establishment for the purpose of direct or indirect commercial advantage. (Court Doc. 1). In Count I of the complaint, Plaintiff alleges unauthorized publication or use of communications in violation of the Federal Communications Act of 1934 (the "Communications Act"), 47 U.S.C. § 605, et seq.[2] In Count II of the complaint, Plaintiff alleges unauthorized interception, exhibition, publication, and divulgence of the Program at the Defendant's establishment, 47 U.S.C. § 553, et seq.[3] In Count III of the Complaint, Plaintiff alleges a common law claim of conversion. (Court Doc. 1).

///

---

[1] The background recitation is derived from Plaintiff's motion for default judgment and supporting papers and this Court's file.

[2] 47 U.S.C. § 605, et seq., prohibits the unauthorized use of wire or radio communications, including interception and broadcast of pirated cable or broadcast programming.

[3] 47 U.S.C. § 553, et seq., prohibits the unauthorized interception or receipt, or assistance in the intercepting or receiving, of cable service.

On August 3, 2005, Defendant was personally served with a summons and complaint. (Court Doc. 7). On August 24, 2005, this Court's clerk entered default against Defendant. (Court Doc. 8). Plaintiff seeks a default judgment against Defendant to award $100,000 in statutory damages under its first and second claims and to award $2,000 under its third claim. Plaintiff also seeks an award of $3,110.00 in attorney's fees and costs for a total judgment of at least $105,110. (Court Doc. 14).

## DISCUSSION

### Default Judgment Standard

A court (not clerk) default judgment is required when the claim is for an amount that is not certain or capable of being made certain by computation. See F. R. Civ. P. 55(b)(2). Generally, the default entered by the clerk establishes the defendant's liability:

> Rule 55 gives the court considerable leeway as to what it may require to the entry of a default judgment. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages will be taken as true." (citations omitted). Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977).

Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917-918 (9th Cir. 1987).

A full scale evidentiary hearing on a default judgment is not required in every case. See, Fed. R. Civ. P. 55(b)(2); James v. Frame, 6 F.3d 307, 310 (5th Cir. 1993). The amount of damages may be fixed by affidavits or declarations. Transportes Aereos De Angola v. Jet Traders Invest. Corp., 624 F.Supp. 264 (D. Del. 1985); see, Davis v. Fendler, 650 F.2d 1154 (9th Cir. 1981). Where by contract or statute, the plaintiff is entitled to "reasonable" attorney's fees, the court upon default judgment will determine the amount to be awarded. James, 6 F.3d at 311.

Granting default judgment is within a court's sound discretion. Draper v. Coombs, 792 F.2d 915, 924 (9th Cir. 1986). Factors considered to determine whether to grant default judgment include:

1. The substantive merits of plaintiff's claim;
2. The sufficiency of the complaint;
3. The amount of money at stake;
4. The possibility of dispute as to any material facts in the case;

///

///

5. Whether default resulted from excusable neglect; and

6. "The strong policy of the Federal Rules of Civil Procedure favoring decisions on the merits."

Eitel v. McCool, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).

Upon the entry of default, the Court may accept the factual allegations of Plaintiff's complaint as true to assess liability. The complaint alleges that, with full knowledge that the Program was not to be intercepted, received and exhibited by entities unauthorized to do so, Defendant unlawfully published, divulged and exhibited the Program at the time of its transmission at the address of his establishment for the purposes of direct or indirect commercial advantage or private financial gain. The complaint also alleges that Defendant, by unlawfully intercepting, publishing, divulging and exhibiting the Program at the address of his establishment, tortiuously obtained possession of the Program and wrongfully converted it to his own use and benefit. The complaint is sufficiently plead, indicating the substantive merits of Plaintiff's claims, i.e., unauthorized access and exhibition of the Program at Defendant's establishment and wrongful conversion. Defendant's failure to contest this action in a timely manner demonstrates an absence of a dispute as to material facts. There is no evidence the default resulted from excusable neglect because the service of the complaint and default papers appears in order. Accordingly, the only issue remaining is an award of damages, attorney's fees and costs.

### Plaintiff's Federal Communications Claims

47 U.S.C. § 605 addresses unauthorized publication or use of wire or radio communications and provides in pertinent part:

> (a) . . . no person receiving, assisting in receiving . . . any interstate . . . communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney . . . . No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.
>
> . . .

> (e)(3)(A) Any person aggrieved by any violation of subsection (a) of this section . . . may bring a civil action in a United States district court or in any other court of competent jurisdiction.

47 U.S.C. § 553 addresses unauthorized reception of cable service and provides in pertinent part:

> (a)(1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.
>
> . . .
>
> (c)(1) Any person aggrieved by any violation of subsection (a)(1) of this section may bring a civil action in a United States district court or in any other court of competent jurisdiction.

Plaintiff seeks $100,000 in damages under federal communications and cable statutes. (Court Doc. 14). 47 U.S.C. § 605(e)(3)(C)(i)(II) authorizes statutory damages "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. §605(e)(3)(C)(ii) authorizes damages up to $100,000 if the court finds the violation was willfully committed for commercial advantage or private financial gain. Alternatively, if "the court finds that the violator was not aware and had no reason to believe that his acts constituted violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250." 47 U.S.C. §605(e)(C)(iii).

47 U.S.C. §553(c)(3)(A)(ii) authorizes statutory damages "of not less than $250 or more than $10,000 as the court considers just," and 47 U.S.C. §553(c)(3)(B) authorizes damages up to $50,000 if the court finds the violation was willfully committed for commercial advantage or private financial gain. Alternatively, "where the court finds the violator was not aware and had no reason to believe his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100." 47 U.S.C. § 553(c)(3)(D).

Other federal district courts have addressed statutory damages for unauthorized interception and exhibition of boxing matches. In Joe Hand Promotions v. Burg's Lounge, 955 F.Supp. 42, 44 (E.D. Pa. 1997), the court addressed unauthorized showing of a boxing program and rejected plaintiff's request for $20,000 per defendant per unlawful exhibition:

> We find this amount to be unwarranted in the absence of evidence suggesting especially egregious circumstances . . . . We therefore exercise our discretion under the statute to enter judgment against each of the default defendants for $1,000 pursuant

5

to §605(e)(3)(C)(i)(II) and an additional $1,000 pursuant to §605(e)(3)(C)(ii).

(citations omitted.)

In <u>Home Box Office v. Carlim, Inc.</u>, 838 F.Supp. 432, 435-436 (E.D. Mo. 1993), the court awarded $3,000 in statutory damages under 47 U.S.C. §§ 553(c)(3)(B) and 605(e)(3)(C)(ii) for defendant's willful, unauthorized exhibition of a boxing program at its restaurant and bar by using a decoder in its satellite system. In <u>Home Box Office v. Gee-Co., Inc.</u>, 838 F.Supp. 436, 440 (E.D. Mo. 1993), the same court awarded $5,000 in statutory damages for defendant's willful, unauthorized exhibition of a boxing program and knowing use for several years of a pirate decoder in a satellite system at its sports café.

In <u>Cablevision Systems Corp. v. 45 Midland Enterprises, Inc.</u>, 858 F.Supp. 42, 45 (S.D.N.Y. 1994), the federal magistrate judge recommended (and the district court approved) damages in the amount of $50 per patron for a tavern's unauthorized exhibition of a boxing match for total of $2,800. In <u>Home Box Office v. Champs of New Haven, Inc.</u>, 837 F.Supp. 480, 484 (D. Conn. 1993), the court rejected a request for maximum statutory damages for a bar's unauthorized interception and public exhibition of plaintiff's satellite programming and awarded $10,000.

In the case at hand, there is little factual evidence regarding damages. Plaintiff presents an investigator's affidavit that he paid no cover charge and that between five and nine patrons were in Defendant's "very small" establishment during the exhibition of the Program. (Court Doc. 14). Presumably, Defendants willfully pirated the Program for financial incentive.[4] However, there is no evidence Defendant advertised the exhibition of the Program or made extra profits from the pirated boxing program. As noted, other courts have not assessed maximum statutory damages for one-time, unauthorized showing of boxing programming or even repeated showings of pirated programming. Based on the evidence before the Court, Plaintiff's request for $100,000 in statutory damages is

///

---

[4]Plaintiff asserts that Defendant could only lawfully obtain the Program by contracting with Plaintiff for the rights to exhibit the Program. Since this lawful approach was not taken, it is assumed that Defendant undertook wrongful actions to intercept and/or receive and broadcast the Program. (Court Doc. 18, p. 3). Plaintiff gives examples of such wrongful acts as follows: using an unauthorized decoder, obtaining cable service and illegally altering the cable service to bring the Program's signal into Defendant's establishment, or moving a decoder from its authorized location into the establishment. (Court Doc. 14, Memorandum, p. 3).

excessive. The relatively few number of persons in the small establishment indicate that Defendant did not profit much from the viewing the Program. Accordingly, the Court finds Plaintiff is entitled to damages in the amount of $5,000 under 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 553(c)(3)(A)(ii) and an additional damage award of $1,000 for Defendants' willful commission under 47 U.S.C. §§ 605(e)(3)(C)(ii) and 553(c)(3)(B).

Under 47 U.S.C. §§ 553(c)(2)(C), the court may award a prevailing aggrieved party full costs, including reasonable attorney's fees. Under 47 U.S.C. § 605(e)(3)(B)(iii), the Court shall direct the recovery of full costs, including reasonable attorney's fees, to an aggrieved party who prevails. Plaintiff seeks $2,500 in attorney's fees but has submitted no supporting documentation for the calculation of such fees. (Court Doc. 13). Plaintiff also seeks $610 in costs for filing fees, service of process, and investigation expenses, which seem appropriate. Plaintiff has demonstrated it is entitled to recover its $610 costs and reasonable attorney's fees. The Court finds $2,500 to be a reasonable amount of attorney's fees.

### Plaintiff's Conversion Claim

Although Plaintiff alleges additional damages, in the amount of $2,000, for its common law claim of conversion, Plaintiff failed to address this claim in its memorandum of points and authorities in support of its application for default judgment (Court Doc. 14), failed to sufficiently outline the elements of a California state law conversion claim,[5] and failed to demonstrate the actual value of the property which Defendants converted.[6] Moreover, give the absence of evidence suggesting especially egregious circumstances in this case, the Court finds any additional damages beyond the amount statutorily assessed (see, supra) is unwarranted. Accordingly, the Court finds that Plaintiff is entitled to no recovery on its claim for conversion.

///

---

[5] Elements of conversion, under California law, are: (1) ownership or right to possession of property; (2) wrongful disposition of that property right; and (3) monetary damages. G.S. Rasmussen & Assoc. v. Kalitta Flying Serv., 958 F.2d 896, 906 (9th Cir. 1992).

[6] Damages for conversion must be based on the value of the property at the time of the conversion. Krueger v. Bank of America, 145 Cal.App.3d 204, 215 (1983).

**RECOMMENDATIONS**

For the reasons discussed above, the Court RECOMMENDS granting Plaintiff a $9,110 default judgment against Defendant as follows:

1. $6,000 for federal statutory damages as follows:
    a. $2,500 under 47 U.S.C. § 605(e)(3)(C)(i)(II);
    b. $500 under 47 U.S.C. § 605(e)(3)(C)(ii) (willful commission);
    c. $2,500 under 47 U.S.C. §553(c)(3)(A)(ii);
    d. $500 under 47 U.S.C. §553(c)(3)(B) (willful commission); and
2. $3,110 for costs and attorney's fees.
    Total: $9,110.

These findings and recommendations are submitted to the Honorable Robert E. Coyle, Senior United States District Court Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304. Within ten (10) court days after service of these findings and recommendations on the parties, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties and the Magistrate Judge in compliance with Local Rule 72-304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Responses to objections shall be served and filed within ten (10) court days after service of the objections in compliance with Local Rule 72-304(d). A copy of the responses must be served on the Magistrate Judge. The Court will then review the Magistrate Judge's ruling, pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:**   **October 27, 2005**        /s/ Theresa A. Goldner
j6eb3d                                         UNITED STATES MAGISTRATE JUDGE